UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RODOLPHO RODRIGO RODRIGUEZ,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

No. 1:20-cv-00197-GSA

**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

## I.    Introduction

Plaintiff Rodolpho Rodrigo Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 16, 21, 22.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

## II.    Procedural Background

On July 22, 2016 Plaintiff filed applications for disability insurance benefits and supplemental security income.  AR 180–83; 184–94.  Plaintiff claimed disability beginning October 8, 2015 due to left eye blindness, left ankle problems, bilateral knee problems and high blood pressure.  AR 213.  The Commissioner denied the applications initially on September 2, 2016, and on reconsideration on November 15, 2016.  AR 80–81; 100–101.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 6 and 9.

"ALJ") on September 14, 2018.  AR 29–57.  On January 8, 2019 the ALJ issued a decision denying Plaintiff's application.  AR 15–24.  The Appeals Council denied review on December 4, 2019.  AR 1–6.  On February 7, 2020 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.   Factual Background

#### A.   Plaintiff's Testimony

Plaintiff lived in a single-story home with his girlfriend, her adult daughter and four dogs.  AR 38.  He graduated from high school.  AR 39.  Plaintiff had prior experience as a painter, maintenance worker and frozen food packager.  AR 39–41.  He lifted up to 50 pounds at his previous jobs.  *Id.*  He had a driver's license and still drove a vehicle.  AR 43.  He could do some household chores including taking out the garbage, cooking and cleaning.  AR 43–44.  He could stand for 10 minutes before taking a break.  AR 44.  He used a cane every day.  AR 44.  The pain and swelling in his left ankle worsened when he was on his feet.  AR 47.  On an average day he iced his left foot for 10 to 20 minutes every two hours while seated with his legs elevated.  AR 47.  He did not take pain medication because it was ineffective.  AR 44.  He weighed 246 pounds which put extra pressure on his foot.  AR 48.  Every 30 minutes his right eye became strained and he had to close it for 30 to 45 minutes.  AR 45.  He rested his eye about half the day on an average day.  AR 46.  He could carry no more than a gallon of milk in each hand.  AR 55.

#### B.   Vocational Expert

The VE classified Plaintiff's past employment as a painter, apartment maintenance worker and hand packager at the medium exertional level per the DOT and as performed.  AR 50.  The ALJ posed a hypothetical to the VE regarding an individual with Plaintiff's vocational profile who could perform work at the medium exertional level with occasional pushing, pulling and pedal use with the left lower extremity and had monocular vision.  AR 51.  The VE testified that such an individual could perform Plaintiff's past work as a hand packager and could also perform other jobs existing in significant numbers in the national economy including busser, janitor and automobile detailer.  AR 51–52.  The janitor position would not require depth perception.  AR 54.  If the individual required two unscheduled breaks of 15-minute duration to elevate the left ankle, no work would be available.  AR 53.  If the individual was off task 15% of the day to rest his right eye, no

work would be available.  AR 54.

### C.    Medical Records

Plaintiff visited an ophthalmologist, Dr. Prescott, on May 26, 2016 who assessed total retinal detachment and phthisis bulbi of the left eye, visual acuity of 20/30 in his right eye and NLP in his left eye.  AR 308–11.  On November 13, 2017 Plaintiff visited an optometrist, Dr. Pei, reporting decreased vision.  AR 330.  Dr. Pei assessed bilateral hypermetropia (farsightedness) and gave Plaintiff a new glasses prescription.  AR 330–31.  Dr. Prescott completed a DMV Report of Vision Examination on March 2, 2017.  AR 333–34.  He indicated that Plaintiff's retinal detachment was stable as of April 2015 and that Plaintiff's medical condition would not affect the functioning of the eye in the future.  *Id.*

On November 9, 2016 Plaintiff visited Dr. Morales, his primary care provider, with a complaint of left ankle pain dating back two to three years.  AR 562.  Plaintiff visited Dr. Morales again in May 2017 with worsening left ankle pain and right knee pain.  AR 519.  Dr. Morales indicated Plaintiff's left ankle pain was most likely due to obesity and repetitive use up and down stairs.  AR 518.  He advised Plaintiff to get new shoes and referred Plaintiff to a podiatrist.  AR 518–520.

On July 21, 2017 Plaintiff visited a podiatrist, Dr. Oji, for left foot pain worsened with activity.  AR 499.  Examination revealed reduced ROM of bilateral ankles, "too many toe signs appreciated bilaterally," pain with single heel rise, decreased medial longitudinal arch in his left foot, 5/5 muscle strength, and no tenderness to palpation at the ankle joint.  AR 502.   Dr. Oji assessed subtalar joint arthrosis, prescribed a brace and recommended arthrodesis surgery.  AR 502.  Examinations in September 2017 and June 2018 revealed substantially similar findings.  AR 399, 461.  Plaintiff was scheduled for left ankle arthrodesis surgery but cancelled due to family complications.  AR 399.  Dr. Oji reiterated that conservative treatment modalities would not eliminate his pain and that he would benefit from surgical intervention.  AR 399–400.  He was scheduled for reevaluation in one year.  AR 400.

### D.    Medical Opinions and Administrative Findings

Non-examining state agency medical consultants E. Wong, M.D., and D. Chan, M.D.,

reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively. Both opined that Plaintiff had no exertional limitations but had the following vision limitations on the left side: limited near acuity, far acuity, depth perception, accommodation, color vision and field of vision. AR 64–65; 86–87.

Plaintiff's treating podiatrist, Dr. Oji, completed a Medical Source Statement of Ability to Do Work-Related Activities on September 15, 2017. AR 335–38. He opined that Plaintiff could lift and carry no more than 10 pounds, could stand and walk less than two hours in a workday, could perform limited pushing and pulling with the lower extremities and could never perform any postural activities. AR 335–36. As to the clinical findings in support of her opinion, Dr. Oji noted a diagnosis of severe ankle and subtalar arthritis. AR 336.

The agency did not obtain a consultative physical examination.

### IV.    Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision

for harmless error, which exists when it is clear from the record that the ALJ's error was

inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035,

1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V.     The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that
> he or she is unable to engage in substantial gainful activity due to a medically
> determinable physical or mental impairment that has lasted or can be expected to
> last for a continuous period of not less than twelve months.   42 U.S.C. §
> 1382c(a)(3)(A).   An individual shall be considered to have a disability only if . . .
> his physical or mental impairment or impairments are of such severity that he is not
> only unable to do his previous work, but cannot, considering his age, education, and
> work experience, engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for him, or whether
> he would be hired if he applied for work.

> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-

(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial

gainful activity during the period of alleged disability, (2) whether the claimant had medically

determinable "severe impairments," (3) whether these impairments meet or are medically

equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4)

whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant

work, and (5) whether the claimant had the ability to perform other jobs existing in significant

numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears

the burden of proof at steps one through four, the burden shifts to the commissioner at step five to

prove that Plaintiff can perform other work in the national economy, given her RFC, age, education

and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

VI.     **The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of October 8, 2015.  AR 18.  At step two, the ALJ found that Plaintiff had the following severe impairments: total retinal detachment of the left eye, obesity and left ankle arthritis. AR 18.  The ALJ found that Plaintiff had the following non-severe impairments: hypertension, history of thyroid cancer and postsurgical hypothyroidism.  AR 18.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 18.  Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC), and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), with occasional pushing, pulling, and pedal use with the left lower extremity and was limited to jobs that require monocular vision.  AR 19.  At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could perform his past relevant work as a hand packager.  AR 22.  At step five, the ALJ found that Plaintiff could also perform other jobs existing in significant numbers in the national economy: automobile detailer, busser and janitor.   AR 23.  Accordingly, the ALJ found that Plaintiff had not been under a disability since his alleged disability onset date of October 8, 2015.  AR 23.

VII.    **Issues Presented**

Plaintiff alleges three errors in the ALJ's analysis.  First, Plaintiff contends the ALJ failed to offer sufficient reasoning for rejecting the opinion of his podiatrist, Dr. Oji, as to his limited ability to stand and walk.  Br. at 7–10, Doc. 16.  Second, Plaintiff contends the ALJ failed to provide sufficient reasons for rejecting his subjective complaints.  Br. at 11–12.  Third, Plaintiff contends that the ALJ erred in failing to include all of his limitations in the RFC and in the hypothetical she posed to the VE.  Br. at 10, 13.

A.      **Rejecting Dr. Oji's Opinion**

1.      **Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual

functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins*, 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence.  20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).  An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or

examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2.    Analysis

Plaintiff's treating podiatrist, Dr. Oji, completed a Medical Source Statement of Ability to Do Work-Related Activities on September 15, 2017. AR 335–38. She opined that Plaintiff could lift and carry no more than ten pounds, could stand and walk less than two hours in a workday, could perform limited pushing and pulling with the lower extremities and could never perform any postural activities. AR 335–36. The parties devoted minimal attention to the question of whether Dr. Oji's opinion was contradicted (in which case the "specific and legitimate" reasoning standard applies), or if it was uncontradicted (in which case the "clear and convincing" reasoning standard applies). As to the ultimate issue of disability and the existence of exertional limitations generally, Dr. Oji's opinion was contradicted by the opinions of the non-examining agency physicians who reviewed Plaintiff's medical file. However, Plaintiff notes (albeit in passing) that the non-examining agency physicians did not have access to the records concerning Plaintiff's foot impairment. Not unreasonably, Plaintiff contends that Dr. Oji's opinion was therefore uncontradicted at least as to the impact of Plaintiff's foot impairment on his RFC, considering there is no other examining opinion of record and the non-examining physicians did not have access to records concerning Plaintiff's foot impairment. Thus, Dr. Oji is the only physician who opined on that issue. Plaintiff nevertheless contends that the ALJ's reasoning is insufficient to satisfy either the clear and convincing standard or the specific and legitimate reasoning standard. The Court disagrees.

The ALJ offered the following discussion of Dr. Oji's opinion:

I give very little weight to this opinion because the record does not corroborate it. The claimant reported he was able to do laundry, cook, drive a car, and do light yard work (Exhibit 3E, p. 4). However, as noted above, the claimant testified he weighed 246 and had difficulty standing long periods (Hearing Transcript). Upon physical examination, the claimant had normal coordination and gait (Exhibit 9F, p. 117). Therefore, the opinion is overly restrictive and a less than medium residual functional capacity is appropriate under the circumstances. As such, I give very little weight to Dr. Ojai's opinion.

AR 22.

Lack of corroboration in medical evidence is a valid reason for an ALJ to reject a treating physician's opinion. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Plaintiff contends the ALJ improperly relied on limited findings of normal coordination and gate at the expense of other findings suggestive of limitations, including reduced range of motion, "too many toe signs" bilaterally, and pain with single heel raise. Br. at 9. Similarly, in his reply brief Plaintiff contends that "the ALJ chose to rely on Dr. Oji's objective finding that Plaintiff's gait and coordination were normal, but failed to mention that, during the same examination, Dr. Oji also observed reduced range of motion in Plaintiff's subtalar joint, decreased medial longitudinal arch on the left, 'too many toe signs' bilaterally and pain with a single heel rise." Reply at 2. To the contrary, the ALJ did not limit her discussion to findings of normal coordination and gate. Rather, in the paragraph immediately preceding the one quoted above, the ALJ detailed pertinent findings from Dr. Oji's examination, including most of the findings underscored by Plaintiff. *See* AR 21 ("During a podiatry examination, the claimant demonstrated 5/5 muscle strength bilaterally, a reduced range of motion about his left ankle, and a negative tinel sign with percussion of the tibia nerve. He also presented with pain during single heel rise.").

The ALJ offered a balanced summary of the pertinent examination findings, some of which were suggestive of limitations while others were not. Because the evidence could reasonably support two conclusions regarding Plaintiff's foot limitations, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

Plaintiff also questions the legitimacy of the ALJ (as a lay person) reaching a different conclusion than Dr. Oji reached regarding the clinical significance of Dr. Oji's own examination findings.  Although rhetorically persuasive, this argument finds no support in controlling case law.  In *Ford*, the claimant's treating physician opined that she could use her hands only five percent of a workday, but elsewhere in her treatment notes the physician described the claimant's carpal tunnel syndrome as "very mild."  *Id.*  Presumably, the physician was aware of his own diagnosis and did not find it inconsistent with his opinion on the claimant's functionality.  The ALJ nevertheless found the two statements inconsistent and the Ninth Circuit affirmed.  *Id.*  Thus, an ALJ is not necessarily prohibited from finding an inconsistency between a physician's own treatment notes and the physician's corresponding opinion.

Moreover, Dr. Oji's opinion did not cite any of the examination findings underscored by Plaintiff, such as reduced ROM, decreased medial longitudinal arch, "too many toe signs" bilaterally, or painful single heel rise.  Rather, when describing the clinical findings in support of the alleged standing and walking limitation, Dr. Oji only identified "severe ankle and subtalar arthritis."  AR 336.  If the examination findings underscored by Plaintiff supported the alleged two-hour standing/walking limitation, one would expect Dr. Oji to have cited those findings rather than merely citing a diagnosis.

The ALJ also found Dr. Oji's opinion inconsistent with Plaintiff's daily activities including laundry, cooking, driving and doing light yard work.  AR 21.  Elsewhere in her opinion, the ALJ also observed that Plaintiff reported walking his dog around a park four times per day.  AR 20.  Inconsistency with daily activities is a valid reason for rejecting a physician's opinion.  *Ford*, 950 F.3d at 1155.   Plaintiff contends the ALJ's reasoning is insufficient because she did not explain the nature of the inconsistency.   Br. at 8.  Plaintiff contends that there is no inherent inconsistency with his reported activities and Dr. Oji's opinion that he could stand and walk no more than two hours a day, and that Plaintiff did not testify he performed standing and walking activities for longer than that.  Plaintiff's cited precedent does not establish that a direct contradiction is required.  It is rarely the case that a physician opines that a claimant can stand less than two hours a day and the claimant directly states that he does in fact stand more than two hours a day.  Rather, courts consider

whether the Plaintiff's reported activities on balance are inconsistent with the purported limitations. For example, Plaintiff cites *Ghanim* in which the court found, based on a "holistic review of the record," that Plaintiff's "limited daily activities [were] not in tension with the opinions of his treating physicians." *Ghanim v. Colvin*, 763 F.3d 1154, 1162. Here, as reflected in the exertion questionnaire cited by the ALJ, Plaintiff reported that he performed "everyday chores," walked four times around a dog park, washed clothes, cooked, and performed light yard work. AR 221–23. He noted that "after 4pm, my ankle starts to hurt." AR 223. These statements are in tension with the notion that Plaintiff's left ankle condition prevented him from standing and walking more than two hours a day.

### B.      Plaintiff's Subjective Complaints

#### 1.      Applicable Law

The ALJ is responsible for determining credibility,[2] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the

---

[2] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5

## 2.    Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering.  AR 20.  Thus, the ALJ was required to articulate clear and convincing reasons before rejecting Plaintiff's reported symptoms.  *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).  The ALJ did so, finding Plaintiff's allegedly disabling symptoms inconsistent with various medical and non-medical evidence.

The ALJ offered the following summary of her reasoning:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent as discussed below.

AR 20.  Plaintiff focuses exclusively on this quoted statement, largely disregarding the specifics the ALJ provided throughout her decision.  The ALJ observed that, notwithstanding Plaintiff's allegations of debilitating ankle pain, he took only Tylenol for his pain and canceled his ankle surgery.  AR 20–21.  Lack of treatment is a clear and convincing reason for rejecting subjective complaints.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  The ALJ also discussed

Plaintiff's self-reported activities, the same activities discussed above which the ALJ identified in support of her decision to reject Dr. Oji's opinion.  AR 21.  Those activities were a valid basis to reject Plaintiff's subjective complaints.  *See Burch*, 400 F.3d at 680; *Valentine v. Commissioner Social Sec. Admin.,* 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities"  evidence which "suggest[ed] that Valentine's later claims about the severity of his limitations were exaggerated.").   Finally, the ALJ discussed Dr. Oji's examination findings, some of which were suggestive of limitations (reduced ROM, painful single heel raise) while others were not (5/5 muscle strength, negative tinel sign).   Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

Plaintiff's lack of follow through with surgery for his ankle condition, the mixed findings on examination, and Plaintiff's self-reported activities were clear and convincing reasons for rejecting his subjective symptomology.

### C.        The ALJ's Hypothetical to the VE

An ALJ may rely on the testimony of a VE as substantial evidence only if the hypothetical question posed to the VE includes all of Plaintiff's limitations.  *Thomas v. Chater*, No. CIV. 96-20690 SW PVT, 1997 WL 383172, at *3 (N.D. Cal. July 2, 1997); *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988).  Plaintiff contends the ALJ's hypothetical was deficient for two reasons.

First, Plaintiff contends the ALJ erred in only referencing "monocular vision" in her hypothetical to the VE.  Plaintiff contends that monocular vision is not a limitation but a condition, a condition which causes the specific limitations identified by the state agency physicians

(including limited depth perception, field of vision, and visual acuity, among others), none of which were included in the ALJ's hypothetical to the VE.

Plaintiff however overlooks that the ALJ found at step four that he could perform past relevant work as a hand packager.  The ALJ only proceeded to step five in the alternative and found that Plaintiff could also perform the additional jobs identified by the VE which the VE testified existed in significant numbers and would not be precluded by monocular vision.  Any alleged error in the hypothetical to the VE would not undermine the ALJ's step four finding.  *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (finding that the ALJ's step four finding that Plaintiff could perform past relevant work made it unnecessary to proceed to step five and call a VE).

Relatedly, Plaintiff also suggests that the ALJ's RFC was itself deficient in that it only accounted for monocular vision, not the related limitations.  Plaintiff's argument is unpersuasive. The ALJ's RFC analysis as a whole suggests that she did indeed adopt the vision limitations identified by the state agency physicians.  Although she only listed "monocular vision" in the heading of her RFC analysis, in the body of the analysis she set forth all related limitations identified by the state agency physicians and assigned great weight to that portion of their opinions. *See* AR 21 (explaining that the state agency physicians "opined the claimant had no exertional or postural limitations, *but he would have limited vision with his left eye concerning near and far acuity, depth perception, accommodation, color vision, and field of vision* . . . I give partial weight to these opinions, granting little weight to the exertional limitations *and great weight to the remainder of the opinion*.") (emphasis added).

Even if the ALJ's RFC assessment is not susceptible to this reading, Plaintiff makes no attempt to substantiate the notion that the condition known as "monocular vision" is not coextensive with the related limitations identified by the state agency physicians.  Moreover, Plaintiff does not specifically contend that his past relevant work or the jobs identified by the VE would in fact be

precluded by his vision limitations.  Plaintiff's argument is not sufficiently developed.  *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless"). *Greenwood v. Fed. Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

Finally, Plaintiff contends that the ALJ's hypothetical to the VE was deficient in that she did not specify that the hypothetical individual could stand and walk six out of eight hours.  Rather, the ALJ only stated that the individual could perform "medium" exertional work with some pushing, pulling and vision limitations.  AR 51.  In response, Defendant contends that medium work by definition requires standing and walking six hours in an eight-hour day.  Resp. at 12 (citing 20 C.F.R. § 404.1567(c)).  In reply, Plaintiff notes that the regulation cited by Defendant "mentions nothing about standing and walking only six hours."  Resp. at 5.  Indeed, that regulation does not specify standing and walking six hours.  Light work is defined as work which "requires a good deal of walking or standing" and the definition of medium work provides that "if someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(b)-(c).  Although neither regulation defines "a good deal of walking or standing," SSR 83-10 provides that "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday."  Plaintiff identifies no legal authority in support of the proposition that an ALJ commits error where she uses the term "medium" exertional work without defining that term for the VE.

## VIII.   Order

For the reasons stated above, the Court finds that substantial evidence and applicable law

support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Rodolpho Rodriguez.

IT IS SO ORDERED.

Dated:   **April 21, 2021**                 **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE